Rubén Berríos, Plaintiff and Appellant, *v.* Courtesy Motors of Puerto Rico, Inc., Defendant and Appellee.

No. CE-63-44.     Decided November 25, 1964.

*Leopoldo C. Delucca* and *Luis A. Lugo, Jr.,* for appellant. *B. Sánchez, B. Sánchez Rivera, Carlos R. Vélez,* and *Ana R. Rodríguez Olazagasti* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

On August 21, 1961 appellant Rubén Berríos purchased from Courtesy Motors of Puerto Rico, Inc., appellee corporation herein, a Taunus automobile for the total amount of $2,357.18, of which $157.18 corresponded, excluding the price, to other expenses of the contract.[1] The vendee was credited the amount of $1,715, as trade-in value for another unit delivered to the vendor. The payment of the balance of

---

[1] The expenses included items for credit investigation and transfer of license, automobile insurance and vendee's life insurance premiums to secure the deferred payment and financing expenses.

$642.18 was deferred, the vendee agreeing to pay it in 22 monthly instalments of $30.58 each.[2]

Three months later a redhibitory action was brought to rescind the contract in question because the vehicle had a hidden defect. The trial court determined that the unit object of the contract had a defect in the semi-automatic transmission which manifested itself in such a manner that it hindered the gearshift which was indispensable for the operation of the vehicle, causing it to remain motionless and requiring towing. This trouble happened about 12 times. In all these occasions it was taken to appellee's shop for the necessary repairs, without success. In view of this situation, appellant chose to rescind the contract, and upon the enterprise refusing to receive the vehicle, he parked it in the carport of his house, where it has remained at the vendor's disposal. Considering that it was a defect which was not visible, or apparent, or manifest, which rendered the vehicle unfit for the use to which it was destined, and finally, that had the vendee knowledge thereof he would not have acquired it, judgment was rendered decreeing the contract between the parties to be "resolved" (sic). Consequently, the District Court ordered defendant to refund to plaintiff the amount of $2,996.28 for the "expenses incurred," distributed as follows: $1,715 for the value of the vehicle delivered; $489.28 for 16 monthly instalments paid to the financing company;[3] and $792 for expenses incurred for transportation during a period of eleven months when he was precluded from using the automobile.

Defendant appealed. The Superior Court, in a laconic judgment, reversed the judgment of the trial court merely

---

[2] On the date of the hearing in the District Court in October 1962, appellant had paid the instalments regularly to the assignee of the conditional sales contract.

[3] We presume it covers the instalments due up to January 24, 1962, date on which the District Court rendered judgment.

stating that the defect of a mechanical contrivance which was liable to becoming defective at any time or circumstance is not a hidden defect which renders the vehicle unfit for the use to which it was destined. It added that if none of the parties could anticipate what would happen to the vehicle, the vendor should have a reasonable opportunity to repair any defect in the mechanism. It relied on *Díaz* v. *Grissom International, Inc.*, a judgment of the same court. In deciding a motion for reconsideration it stated that the mechanical defect which the automobile purchased by Berríos had, was not a hidden defect which might cause rescission. We issued writ of certiorari.

■ 1—The applicable laws are §§ 1373, 1374, and 1375 of the Civil Code, 1930 ed., 31 L.P.R.A. §§ 3841, 3842, and 3843, which in synthesis, binds the vendor to give a warranty against hidden defects, which the thing sold may have, should they render it unfit for the use to which it was destined, or if they should diminish said use in such a manner that had the vendee knowledge thereof he would not have acquired it, and in such cases the vendee may withdraw from the contract, the expenses which he may have incurred being returned to him and if the vendor knew of the vices or defects, he should indemnify for damages.[4]

■ Contrary to the intimation in the brief judgment of the trial court, in several occasions we have acknowledged the right of the purchaser of a motor vehicle to seek protection in the redhibitory action resulting from hidden defects. *Fuentes* v. *Hull Dobbs Co.*, 88 P.R.R. 544 (1963), defects of the tires of a truck which are considered as essential fixture of the units; *Millán* v. *Caribe Motors Corp.*, 83 P.R.R.

---

[4] In general, see, Borrell Soler, *El Contrato de Compraventa* 142–152 (Bosch ed. 1952) ; III Espin, *Manual de Derecho Civil Español* 509–510 (Ed. *Revista de Derecho Privado*, 1961) ; 4 Castán, *Derecho Civil Español, Común y Foral* 109 *et seq.* (8th ed. 1956) ; II-2 Puig Brutau, *Fundamentos de Derecho Civil* 205 *et seq.*

474, 481 (1961), breakage in the bearings, the radiator, and the block cover; *Marrero* v. *Garage Mayagüez, Inc.*, 31 P.R.R. 859 (1923). Other jurisdictions having statutory provisions similar to those in our Code pronounce themselves in the same sense. Thus, the Judgment of January 25, 1924 of the Supreme Court of Spain (161 *Jur. Civ.* 193), states that § 1484 of the Spanish Civil Code (§ 1373 of Puerto Rico) is correctly interpreted in the judgment which affirms that the welding of the crankshaft of an automobile constitutes, in fact, a hidden defect of the thing sold and that although the fact that the crankshaft is welded does not imply that the automobile is absolutely unfit for the use to which it was destined, it diminishes said use in such a manner that had the vendee knowledge thereof he would not have acquired the vehicle. The same expression is found in the Judgment of February 24, 1914 (129 *Jur. Civ.* 499) concerning an automobile the motor of which ran too hot, although the vendee at first was satisfied with its good appearance and comfort. In Louisiana, the same result was obtained under the provisions of § 2476 of the Civil Code, West, 10 Louisiana Civil Code 275. *Stevens* v. *Daigle and Hinson Rambler, Inc.*, 153 So.2d 511 (La. 1963), where the redhibitory action is allowed in the case of a vehicle the motor of which was required to be replaced because it was burning excessive quantities of oil. See, also, *Davis* v. *Bryan Chevrolet Inc.*, 148 So.2d 800 (La. 1962); *Kennedy* v. *Jacobson-Young, Inc.*, 144 So.2d 100 (La. 1962); *Long* v. *Holmes Ford, Inc.*, 138 So.2d 34 (La. 1962). See, *The Nature of the Redhibitory Action*, 4 Tul. L. Rev. 433 (1930). The action accrues whether the vehicles involved are new or old. *Newton* v. *Smith Motors Inc.*, 175 A.2d 514 (Vt. 1961); *Stubblefield Chevrolet Co.* v. *Martínez*, 124 So.2d 393 (La. 1960).

■ No great effort is necessary to reject the decision of the trial court to the effect that the set of facts does not present a case of hidden defect. We do not know, because it did not state, the test used by the court to reach said conclusion. But as correctly weighed by the District Court, it involved a defect which rendered the vehicle short of useless. Proof thereof is that in the short lapse of three months it was laid up for repairs at least twelve times without rendering the unit fit for use. The efficient and proper operation of the gearshift of a vehicle is so fundamental that we need not elaborate to hold that a defect which renders it practically useless constitutes a vice which may be cause for rescission. Our conclusion is buttressed by the fact that the vendee is not an expert and that by reason of his occupation —storekeeper in a shipping company—it is presumed that he could not easily detect the defect stated.

■ *Díaz* v. *Grissom International, Inc.*, the judgment of the Superior Court on which the trial judge sought to rely, which we refused to review by order rendered July 6, 1962 in petition for review No. R-62-148, is clearly distinguishable. There, the automobile had a defect in the motor which was noticed on the day subsequent to the sale and which was fixed by the vendor by substituting the voltage regulator and certain adjustments in the differential. After the repair was performed, "the automobile was in normal functioning conditions," the opinion says. Under such circumstances the redhibitory action was clearly improper, since it is clear that in cases of minor repairs the vendee is bound to accept them. In the case at bar, even after twelve repairs the vehicle was not fit for the use to which it was destined. *Cf. Meyer* v. *Mack Motors Trucks, Inc.*, 141 So.2d 427 (La. 1962).

■ Defendant argues that, in any event, it must be considered that the vendor did not have bad faith when

selling the automobile with the defect in the transmission. Bonet Román, in *Código Civil Comentado* 1165 (Aguilar ed. 1962), states that "To exempt the vendor from giving the warranty, the good faith is not considered, since § 1485 establishes his liability, even when the faults or hidden defects of the thing sold be unknown to him." Manresa in X *Comentarios al Código Civil Español* 254 (5th ed. 1950), states that "As to the vendor's ignorance of the hidden vices or defects, since the liability imposed by law does not seek to punish the bad faith but merely to correct, as far as possible, the error contracted by the vendee, it is unquestionable that it cannot produce any effect whatsoever, and much less that of exempting him from the liabilities to which he is bound by law." However, such absence of bad faith produces other juridical effects which we shall subsequently discuss.

■ Therefore, the Superior Court erred in reversing the judgment rendered by the District Court. It was proper to decree the rescission of the contract of sale and consequently order the restitution of the expenses which the vendee may have incurred,[5] as well as order defendant to take charge of the automobile sold and its delivery.

■ 2—Now then, is it proper to include in the amount to be reimbursed the expenses for transportation incurred by plaintiff as a result of the unfitness of the automobile for the use to which it was destined? Section 1375 of the Civil Code, *in fine*, provides that only in case the vendor knew of the faults or hidden defects in the thing sold and did not give notice thereof to the vendee, then, should he choose the rescission, the vendor is bound to indemnify for

---

[5] The judgment will be limited to ordering defendant to refund to plaintiff the amount of $1,715, value of the automobile delivered, and legal interest from August 21, 1961, as well as the amount of the instalments paid by the vendor to the financing company and its legal interest from the date of payment of each instalment.

the damages caused. The gloss of Manresa, *op. cit.* at p. 256 says: "The words 'expenses which he may have incurred' used in § 1486 [1375 P.R.] may, in effect, be understood as not limited to the expenses of the contract, but to them and to any expenses incurred as a result of the vices or defects of the thing sold to him. But as the latter really deserve the consideration for damages, it seems more proper to include them in the second paragraph of the section and consider them only in the case there is bad faith, or at least, fault or negligence pursuant to § 1902."

■ The findings of fact of the District Court are silent on this aspect of whether or not there existed bad faith, which fundamentally depends on the knowledge of the defect prior to the sale. In truth, the evidence offered did not tend to establish this fact, and only through a strained process of inferences could we conclude from the scarce elements appearing in the statement of the case that defendant acted in bad faith, or with fault or negligence. As this is not presumed, we will acquit it from the obligation to indemnify. The item of the transportation expenses will be eliminated.

The judgment rendered by the Superior Court, San Juan Part, on August 27, 1963 will be reversed, and the case will be remanded to said court to enter judgment sustaining the complaint and consequently ordering defendant to pay to plaintiff the amount of $1,715 and legal interest from August 21, 1961, as well as the amount of the instalments paid by plaintiff pursuant to the conditional sales contract and legal interest from the date on which the payment of each instalment was paid, with costs, and the amount of $200 for attorney's fees.